UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | * | |
| DEVRA MATTES, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 24-cv-10640-ADB |
| | * | |
| LELAND DUDEK, | * | |
| | * | |
| Acting Commissioner of the Social Security | * | |
| Administration, | * | |
| | * | |
| Defendant. | | |

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

      Plaintiff Devra Mattes ("Plaintiff") brings this action pursuant to § 405(g) of the Social

Security Act, 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of the

Social Security Administration (the "Commissioner") denying her claim for Title II Disability

Insurance Benefits ("DIB").  Currently pending are Plaintiff's motion to reverse the

administrative law judge's ("ALJ") May 1, 2023 decision, [ECF No. 12], and the

Commissioner's cross-motion to affirm the ALJ's decision denying SSI benefits, [ECF No. 15].

For the reasons set forth below, Plaintiff's motion is **<u>GRANTED</u>**, and the Commissioner's

motion to affirm is **<u>DENIED</u>**.

## I.    BACKGROUND

### A.    Statutory and Regulatory Framework:  Five-Step Process to Evaluate Disability Claims

"The Social Security Administration is the federal agency charged with administering both the Social Security disability benefits program, which provides disability insurance for covered workers, and the Supplemental Security Income program, which provides assistance for the indigent[,] aged and disabled."  *Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001) (citing 42 U.S.C. §§ 423, 1381a).

The Social Security Act (or the "Act") provides that an individual shall be considered to be "disabled" if he or she is:

> unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A); *see also id.* § 423(d)(1)(A).  The disability must be severe, such that the claimant is unable to do his or her previous work or any other substantial gainful activity that exists in the national economy.  *See* 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905.

When evaluating a disability claim under the Act, the Commissioner uses a five-step process, which the First Circuit has explained as follows:

> All five steps are not applied to every applicant, as the determination may be concluded at any step along the process.  The steps are: 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the applicant's "residual functional capacity" [RFC] is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her [RFC], education, work

experience, and age, is unable to do any other work, the application
is granted.

*Seavey*, 276 F.3d at 5 (citing 20 C.F.R. § 416.920).

Plaintiff has the burden of proof through step four of the analysis, including the burden to

demonstrate RFC. *See Flaherty v. Astrue*, No. 11-cv-11156, 2013 WL 4784419, at *8–9

(D. Mass. Sept. 5, 2013). At step five, the Commissioner has the burden of showing the

existence of jobs in the national economy that Plaintiff can perform notwithstanding his or her

restrictions and limitations. *See Goodermote v. Sec'y of Health & Hum. Servs.*, 690 F.2d 5, 7

(1st Cir. 1982).

### B.    Procedural Background

On March 19, 2021, Plaintiff protectively filed for DIB benefits, asserting a February 16,

2021 onset date. Tr. 182–83.[1] The Social Security Administration ("SSA") denied Plaintiff's

application initially on February 18, 2022, and on reconsideration on September 22, 2022. *Id.* at

68–86. Plaintiff subsequently requested a hearing, which ALJ Sujita Rodgers held on April 6,

2023. *Id.* at 22-48. In a May 1, 2023 decision, the ALJ found Plaintiff not disabled. *Id.* at 839–

57. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on January

17, 2024. *Id.* at 1–14. Having exhausted her administrative remedies, Plaintiff filed the instant

Complaint with this Court on March 15, 2024, seeking review of the Commissioner's final

decision pursuant to section 405(g). [ECF No. 1].

---

[1] References to pages in the Administrative Record, which was filed electronically at ECF No. 9,
are cited as "Tr. ___." The Court notes that although the application at Tr. 182-83 in the
administrative record is dated August 24, 2021, Plaintiff's effective protective filing date
("PFD"), as accurately indicated on the Court Transcript Index and in the ALJ's decision, was
March 19, 2021. *See* Tr. 182-83, 839.

### C.    Factual Background

Plaintiff was fifty-one at the time of her February 2021 onset date. Tr. 182. She graduated from high school and completed some college. *Id.* at 26, 199. Plaintiff worked as a yoga instructor and owned her own yoga studio from 2016-2019, after which she worked as an entry level warehouse worker for Amazon up until her 2021 onset date. *Id.* at 34-40, 199.

### D.    Relevant Medical Evidence and Opinions

During the February 2021-May 2023 relevant period, Plaintiff suffered from both mental and physical impairments, including fibromyalgia, anxiety disorder, post-traumatic stress disorder ("PTSD"), headaches, irritable bowel syndrome ("IBS"), chronic fatigue syndrome, and hand tremors. Tr. 841.

Plaintiff was first diagnosed with fibromyalgia in 2016, approximately five years prior to her onset date. Tr. 818. In April 2014, Plaintiff began seeing her primary care physician ("PCP"), Dr. Tatiana Hamawi, at which time Plaintiff complained of "[ten] years worth of muscle tenderness and pain" and "fatigue." *Id.* at 830.

In a February 2023 medical opinion, Dr. Hamawi stated that Plaintiff had suffered from fibromyalgia symptoms for at least twenty years, and that her symptoms worsened in 2016, after she started her own yoga business. Tr. 818, 830. Dr. Hamawi noted that Plaintiff's yoga business failed in 2019, which Dr. Hamawi stated was caused by Plaintiff's "ongoing fibromyalgia symptoms and just the inability to keep up with physical and mental demands." *Id.* Dr. Hamawi added that, beginning in 2020, Plaintiff began to suffer from "significant tender points," in addition to the "long[]standing concentration issues" and physical pain caused by her fibromyalgia. *Id.*

Up until 2020, Dr. Hamawi noted that she had "managed [Plaintiff's fibromyalgia] issues pretty successfully over the years with the use of venlafaxine, bupropion, and zolpidem[,] among trials of various other medications." Tr. 830. During this same time, Dr. Hamawi also treated Plaintiff for depression and anxiety with various psychiatric medications. *See id.* (Dr. Hamawi's February 2023 notes, stating that she treated Plaintiff for anxiety and an episode of major depression, among other conditions); *see also id.* at 658–59, 645.

Dr. Hamawi noted that in 2020, Plaintiff's physical pain required her to request physical accommodations at her job, but that her employer, Amazon, denied the accommodations. Tr. 830. Dr. Hamawi opined that the "humiliation in the loss of [Plaintiff's] job, [along with the] financial stress. . . catapulted [Plaintiff's] fibromyalgia[,] requir[ing] increas[ed] doses of medication and the need to seek the help of a rheumatologist and a psychiatrist." *Id.*

In April 2021, Plaintiff was examined by psychiatrist, Dr. Hanan Khairalla, who diagnosed Plaintiff with generalized anxiety disorder, persistent depressive disorder, "other trauma related disorder," "rule out borderline personality disorder," and fibromyalgia.[2] Tr. 279. Dr. Khairalla recommended that Plaintiff seek individual psychotherapy, continue with gabapentin, and consider decreasing her existing Effexor dose after engaging in therapy. *Id.*

Soon thereafter, in May 2021, Plaintiff began seeing rheumatologist, Dr. Kerri Batra, for her fibromyalgia. Tr. 818. Dr. Batra stated that, at that time, Plaintiff had "been doing very well from [a] fibromyalgia standpoint . . . on 1200 mg [of gabapentin] three times [per] day, [as] prescribed by her PCP." *Id.*; *see also id.* at 282–89 (Dr. Batra's May 2021 visit notes). Dr. Batra

---

[2] "A 'rule out' diagnosis . . . 'means that there is evidence that [the claimant] [may] meet the criteria for that diagnosis, but [the medical source] need[s] more information to rule it out.'" *Madera v. Colvin*, No. CV 15-30133-MGM, 2016 WL 7331555, at *2 (D. Mass. Dec. 16, 2016) (citing *Morin v. Colvin*, No. 1:13-cv-220, 2014 WL 268721, at *2 n.3 (D.N.H. Jan. 23, 2014)).

further noted that Plaintiff was also taking venlafaxine, but that she had "failed" a Lyrica trial.[3] *Id.* at 818.

In November 2021, Plaintiff experienced a fibromyalgia "flare-up," for which Dr. Batra prescribed a treatment that Plaintiff's health insurer refused. Tr. 818, 435–37 (visit notes indicating "multiple fibromyalgia tender points" and "throbbing pain [in] the head, neck, jaw, and cracking shoulders [that] ha[d] progressively worsened over six months").

Plaintiff was simultaneously treated by psychiatrist, Dr. Hala Moustafa, for her mental impairments from November 2021, through April 2022. Tr. 443–52, 466–83. During that time, Plaintiff continued to take several psychiatric medications prescribed by her PCP, Dr. Hamawi, and Dr. Moustafa started her on Lamictal, which she later reported was helping. *Id.* at 477–78.

Subsequently, during a January 2022 examination, Dr. Batra administered trigger point injections for Plaintiff's fibromyalgia, and observed "[t]enderness along the three trigger spots – right trapezius closer to the neck, one spot closer to the shoulder, and medial aspect of the right scapula." Tr. 431–33. In February 2022 visit notes, Dr. Batra stated that the trigger point injections were unsuccessful. *Id.* at 453, 818. Dr. Batra then prescribed naltrexone, and advised Plaintiff to taper off of gabapentin while increasing the naltrexone, which she noted could take up to one year to take effect. *Id.* at 453.

In February 2022, non-examining state agency physician, Dr. Alice Truong, opined that Plaintiff's fibromyalgia was not severe. Tr. 68–70. Dr. Truong thus did not evaluate the

---

[3] Lyrica, the brand name for pregabalin, is a medication that "works in the central nervous system (CNS) to control seizures and pain," and "is a[n] anticonvulsant and neuropathic pain agent." Mayo Clinic, *Pregabalin*, https://www.mayoclinic.org/drugs-supplements/pregabalin-oral-route/description/drg-20067411 (last visited Mar. 25, 2025).

functional limitations associated with Plaintiff's fibromyalgia – or any of Plaintiff's physical impairments.[4]  *Id.*

By contrast, in February 2022, non-examining state agency psychologist, Dr. William Alexander, found that Plaintiff suffered from three severe mental impairments, including persistent depressive disorder, generalized anxiety disorder, and other trauma-related disorder. Tr. 70, 73.  Dr. Alexander opined that Plaintiff suffered from moderate limitations in all four functional categories, including understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  *Id.* at 71-73.

In March 2022, Plaintiff began seeing neurologist, Dr. Audrey Painchaud, for her headaches, for which Dr. Painchaud prescribed steroids.  Tr. 832, 818.

In May 2022, Plaintiff changed mental health providers, moving from Dr. Moustafa's practice with In Mind Behavioral Health in Medfield, Massachusetts to Advanced Practice Registered Nurse/Board Certified Mental Health Nurse Practitioner ("APRN/PMHNP," referred to as "APRN"), GerryAnne Jean, with Boston Neurobehavioral Associates in New Bedford, Massachusetts.  Tr. 443–52, 466–83, 722–750, 802–17.  At that time, ARNP Jean increased Plaintiff's Lamictal dosage.  Tr. 722–23.  APRN Jean continued to treat Plaintiff through the time of her April 2023 hearing.  *Id.* at 31–32.

In October 2022, on reconsideration, non-examining state agency physician, Dr. Meghana Karande, agreed with state agency physician, Dr. Truong, that Plaintiff's fibromyalgia was not severe.  Tr. 80.  Like Dr. Truong, Dr. Karande did not evaluate the functional limitations

---

[4] Dr. Truong did not find any other severe physical impairments.  Tr. 68-70.

associated with Plaintiff's fibromyalgia – or any of Plaintiff's physical impairments.[5]  *Id.* at 79–
80.  At the same time, state agency psychiatrist, Dr. Stephen Kleinman, issued a medical opinion
identical to state agency psychologist, Dr. Alexander's prior February 2022 opinion, finding
several severe mental impairments and multiple moderate functional limitations.  *Id.* at 81-83.

In February 2023, Dr. Batra examined Plaintiff, and noted that Plaintiff was "positive"
for fatigue, chronic pain, headache, vertigo, memory problems, insomnia, anxiety, and
depression.  Tr. 820.  Dr. Batra reported that Plaintiff had "failed [the] low dose naltrexone"
taken for her fibromyalgia.  *Id.* at 818–19.  He noted that, in addition to gabapentin, Plaintiff was
taking Flexeril, along with the steroids prescribed for her headaches by neurologist, Dr.
Painchaud.  *Id.* at 819.  Dr. Batra noted that the steroids had improved Plaintiff's fibromyalgia
symptoms with the exception of her fatigue.  *Id.*  Dr. Batra thereafter adjusted Plaintiff's
gabapentin dosage.  *Id.* at 818.

Also in February 2023, Dr. Batra and Plaintiff's treating PCP, Dr. Hamawi, completed
medical opinions, in which they both opined on the functional limitations associated with
Plaintiff's fibromyalgia.  Tr. 830–31 (Dr. Hamawi's opinion); *id.* at 818–20 (Dr. Batra's
opinion).  In particular, Dr. Batra opined that Plaintiff met the "ACR criteria for fibromyalgia,"
and that "her symptoms may affect her concentration while working."  *Id.* at 819.  She noted that
Plaintiff reported that: (1) her symptoms, including her pain, "[f]requently affect her
concentration[,] which interfere[s] even with doing simple work task[s];" (2) she is unable to
stand more than two and one-half hours in an eight-hour workday; (3) she is able to sit no more
than four hours in an eight-hour workday, and only for one hour at a time; (4) she is able to

_____

[5] Dr. Karande did not find any other severe physical impairments.  Tr. 79-80.

rarely lift twenty pounds and occasionally lift ten pounds; and (5) that she is unable to keep her head in a static position due to pain. *Id.* at 818.

Similarly, Dr. Hamawi opined in February 2023 that Plaintiff's fibromyalgia symptoms limited her to "low levels of exercise and stretching[,] but [that she] cannot do physical activity for prolonged periods[;] nor can she sit still for prolonged periods due to the stiffness that develops." Tr. 830. Dr. Hamawi further opined that Plaintiff would require "breaks every hour for a few minutes to walk around and stretch," and that she "could not work sustained for more than [four] hours due to the pain, stiffness, and brain fog." *Id.* Additionally, Dr. Hamawi opined that Plaintiff would "likely miss" two to four days of work per month due to her physical and mental impairments. *Id.* Finally, Dr. Hamawi ultimately opined that, due to her symptoms, Plaintiff was unable to work at a full-time job in "either a sedentary or physical setting." *Id.* at 831.

Meanwhile, that same month, APRN Jean opined that Plaintiff's mental impairments resulted in several serious limitations, including in her abilities to interact with others; to concentrate, persist, and maintain pace; and to accept instructions and respond appropriately to criticism from supervisors. Tr. 821–23. APRN Jean further opined that Plaintiff would miss more than four days per month due to mental impairment symptoms, and that they would render her twenty percent off-task during an average eight-hour workday. *Id.* at 825.

Thereafter, in March 2023, Plaintiff's treating neurologist, Dr. Painchaud, opined that Plaintiff's was "incapable of even 'low stress' work;" that, due to her headaches, she would require extra breaks for approximately twenty to forty minutes twice per week; that she would be off-task approximately twenty-percent of the time; and that she would miss approximately two days of work per month due to her headaches. Tr. 834–35. Dr. Painchaud additionally opined

that due to her headaches, Plaintiff may "experience[] confusion and difficulty following directions," and that she should "avoid walking, heights, climbing ladders, and driving" when the vertigo associated with her headaches "is active."  *Id.* at 835.  Finally, Dr. Painchaud opined that Plaintiff would be required to "avoid temperature extremes, strong smells, bright lights, loud noises, and fumes."  *Id.*

### E.    ALJ's Decision

On May 1, 2023, the ALJ issued a decision finding that Plaintiff was not disabled under the Act.  Tr. 839–57.  Applying the five-step sequential evaluation process for determining whether an individual is disabled, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity as of her February 16, 2021 onset date, through the date of the ALJ's decision.[6]  *Id.*

At step two, the ALJ determined that Plaintiff suffered from the following severe impairments:  fibromyalgia, anxiety disorder, depressive disorder, and PTSD.  Tr. 841.  The ALJ, however, found that Plaintiff's headache disorder, IBS, chronic fatigue, and hand tremors were not severe.  *Id.* at 841-43.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment, specifically considering Listings 12.04 (depressive, bipolar, and related disorders), 12.06

---

[6] Plaintiff's date last insured ("DLI"), June 30, 2025, post-dated the ALJ's decision; thus, the relevant period for purposes of Plaintiff's DIB claim was from February 16, 2021, through the ALJ's May 1, 2023 decision.  *See* Tr. 841.

(anxiety and obsessive-compulsive disorders), and 12.05 (trauma and stressor-related disorders).[7] Tr. 843–45.

At step four, the ALJ found that Plaintiff possessed an RFC for light work with additional postural, exertional, social, and cognitive/mental limitations. Tr. 845. The ALJ found that Plaintiff could "occasionally climb ramps and stairs, ladders[,] ropes[,] and scaffolds, balance on uneven or slippery surfaces, [and] stoop, kneel, crouch[,] and crawl." *Id.* The ALJ further specified that Plaintiff "can understand, remember, and carry out simple instructions for [two]-hour intervals over the course of an [eight]-hour day [and] [forty]-hour workweek." *Id.* The ALJ additionally limited Plaintiff to "simple changes in workplace routine," and "occasional interaction with coworkers, supervisors, and the public." *Id.*

Subsequently, at step five, the ALJ found that Plaintiff was unable to perform any of her past, relevant work but, relying on the testimony of a vocational expert ("VE"), determined that Plaintiff could perform the jobs of merchandise marker, office helper, and inspector/handpacker, and thus was not disabled. Tr. 855–856, 46–48.

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is "limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000); *accord Sacilowski v. Saul*, 959 F.3d 431, 437 (1st Cir. 2020) (citation omitted) (holding the court reviews "whether the final decision is supported by substantial evidence and whether the correct legal standard was used").

---

[7] As discussed in more detail below, the Court notes that the ALJ failed to adequately consider whether Plaintiff's fibromyalgia equaled a listing, addressing only whether Plaintiff's mental impairments met or equaled a listing.

The Court must defer to the Commissioner's factual findings, so long as such findings are "supported by substantial evidence," but the Court's review of the Commissioner's conclusions of law is *de novo*. *See Sacilowski*, 959 F.3d at 437; *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla," and "means – and means only . . . 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Consolidated Edison*, 305 U.S. at 229). The Court will affirm the ALJ's findings, even if the record could support a different conclusion, when there is substantial evidence to support the ALJ's findings. *See Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991); *accord Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018).

A denial of benefits, however, will not be upheld if the Commissioner "has committed a legal or factual error in evaluating a particular claim." *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting *Sullivan v. Hudson*, 490 U.S. 877, 885 (1989)). In particular, an ALJ's findings are not conclusive "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Sacilowski*, 959 F.3d at 437 (quoting *Nguyen*, 172 F.3d at 35). "The ALJ cannot reject evidence for no reason, or for the wrong reason, and must explain the basis for his findings." *Crosby v. Heckler*, 638 F. Supp. 383, 385 (D. Mass. 1985). Accordingly, if an "ALJ fail[s] to record consideration of an important piece of evidence that supports [the claimant's] claim and, thereby, le[aves] unresolved conflicts

12

in the evidence, th[e] Court cannot conclude that there is substantial evidence in the record to support the Commissioner's decision." *Nguyen v. Callahan*, 997 F. Supp. 179, 183 (D. Mass. 1998). "Failure to provide an adequate basis for the reviewing court to determine whether the administrative decision is based on substantial evidence requires a remand to the ALJ for further explanation." *Crosby*, 638 F. Supp. at 385–86.

## III.    DISCUSSION

Plaintiff argues the ALJ's decision should be reversed because the ALJ erred in:  (1) evaluating four medical opinions; (2) evaluating her testimony; (3) assessing her RFC; and (4) evaluating the VE testimony.[8]  *See* [ECF No. 12 at 2–3].  The Commissioner argues that the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.  *See* [ECF Nos. 15, 16].

### A.    Plaintiff Failed to Adequately Develop Her Arguments Regarding the Challenged Medical Opinions.

Plaintiff contests the ALJ's evaluation of four treating medical opinions, including the February 2023 opinion from Plaintiff's treating PCP, Dr. Hamawi; the February 2023 opinion from Plaintiff's treating rheumatologist, Dr. Batra; the February 2023 opinion from treating APRN Jean; and the March 2023 opinion from treating neurologist, Dr. Painchaud.  [ECF No. 12 at 3–8]; Tr. 830–31 (Dr. Hamawi's opinion); *id.* at 818–20 (Dr. Batra's opinion); *id.* at 821–26 (APRN Jean's opinion); *id.* at 832–35 (Dr. Painchaud's opinion).

---

[8] Plaintiff's statement of issues includes only three issues, one of which the Court notes was framed too broadly to meaningfully state an assignment of error.  *See* [ECF No. 12 at 2-3 (asking generally whether the ALJ's decision was "supported by substantial evidence")].  Additionally, Plaintiff failed to list in the statement of issues her challenges to the ALJ's evaluation of her testimony.  *See* [*id.* at 8-9, 15].

Plaintiff, however, misrepresents the applicable legal standards and fails to adequately develop her arguments regarding the challenged medical opinions.  [ECF No. 12 at 3-8].

First, Plaintiff relies in part on dated, inapplicable pre-March 2017 legal standards in support of her challenge to the ALJ's evaluation of the medical opinions.  *See* [ECF No. 12 at 3–4 (discussing the "three-tiered hierarchy" regarding medical source opinions)].[9]  Second, while Plaintiff restates the substance of each of the challenged medical opinions, she fails to address, let alone engage with, the ALJ's specific supportability and consistency findings given in favor of her rejection of the challenged opinions.  *See* [*id.* at 5–8].  Plaintiff's failure to adequately develop her arguments regarding the ALJ's findings as to the opinions precludes relief on this issue.[10]  *See Guillemard-Ginorio v. Contreras-Gomez*, 490 F.3d 31, 37 (1st Cir. 2007) (quoting

---

[9] Under the post-March 2017 regulations governing Plaintiff's application, "an ALJ does not assign specific evidentiary weight to any medical opinion and need not defer to the opinion of any medical source (including the claimant's treating providers)."  *Richardson v. Saul*, 565 F. Supp. 3d 154, 167 (D.N.H. 2021) (citing 20 C.F.R. § 416.920c(a)).  When determining what weight to assign to a medical source opinion, the ALJ must consider the opinion's "supportability, consistency, relationship, specialization, and other factors."  *Harrison v. Saul*, No. 20-cv-10295, 2021 WL 1153028, at *5 (D. Mass. Mar. 26, 2021) (citing C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5)).  "The most important factors to be considered when the Commissioner evaluates persuasiveness are supportability and consistency; these are usually the only factors the ALJ is required to articulate."  *Id.* (quoting *Nicole C. v. Saul*, No. 19-cv-00127, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (citations omitted) (holding that an ALJ is "required to articulate" the supportability and consistency of a medical opinion in determining that opinion's persuasiveness)); *Vazquez v. Kijakazi*, No. 20-cv-30176, 2022 WL 952764, at *12 (D. Mass. Mar. 30, 2022) (citation omitted) ("The new regulations direct an ALJ to explain how he or she considered the supportability and consistency factors when evaluating medical opinions and making the disability determination.").

[10] The ALJ made several unchallenged findings in rejecting the four opinions.  *See* Tr. 853–55.  For example, as to the opinions regarding Plaintiff's fibromyalgia, the ALJ found Dr. Hamawi's opinion lacked supportability because it was based on Plaintiff's self-reports, was vague and conclusory, and that it also lacked consistency because it conflicted with "minimal objective findings on physical examinations, . . . good response to medication management. . . ," and Plaintiff's activities of daily living ("ADLs").  *Id.* at 853.  The ALJ made similar findings in

*De Araujo v. Gonzales*, 457 F.3d 146, 153 (1st Cir. 2006)) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

For the reasons described in more detail below, however, the Court finds that the ALJ erred in assessing Plaintiff's RFC when she failed to rely on any expert opinions regarding the functional limitations associated with Plaintiff's fibromyalgia – an impairment that the ALJ concurrently found was severe at step two. *See* Tr. 841, 845, 852–55. Because this RFC error infected the ALJ's evaluation of the medical opinion evidence as whole, including the opinions challenged by Plaintiff, the ALJ will be required to reevaluate the medical opinion evidence on remand—despite Plaintiff's briefing deficiencies as to the other issue. [11]

B.      **The ALJ Erred in Assessing Plaintiff's RFC.**

Plaintiff argues that the ALJ erred in assessing her RFC. [ECF No. 12 at 15–16]. As noted, at step two, the ALJ rejected both state agency physicians' opinions regarding Plaintiff's physical impairments, finding that, contrary to those opinions, "[t]he record contains sufficient evidence of evaluations and treatment of [] [Plaintiff's] fibromyalgia for it to meet the

_____

rejecting Dr. Batra's opinion regarding the limitations associated with Plaintiff's fibromyalgia. *Id.* at 855.

[11] Although the ALJ's error pertained to the RFC limitations associated with Plaintiff's fibromyalgia, given the intertwined nature of Plaintiff's fibromyalgia and mental impairments, the error thus impacted the ALJ's step four and step five findings regarding *all* of the impairments the ALJ assessed to be severe at step two.

The Court additionally notes that in the event Plaintiff again challenges the ALJ's evaluation of the medical opinions on remand in a subsequent appeal, a continued failure to address the ALJ's specific supportability and consistency findings on remand could result in waiver of the issue.

*de minimus* standard and be considered a 'severe' impairment. . . as well as [to] evaluate any associated limitations that would exist for the longitudinal relevant period."[12]  Tr. 852, 840–41.

At step four, the ALJ subsequently stated that she had accounted for the restrictions associated with Plaintiff's severe fibromyalgia through exertional and postural limitations in the assessed RFC.  Tr. 851.  The ALJ, however, rejected at that step Drs. Batra's and Hamawi's opinions – the only two medical opinions addressing the RFC limitations associated with Plaintiff's fibromyalgia.  *Id.* at 853, 855.  As such, the ALJ did not base her assessed RFC exertional and postural limitations – and/or the *absence* of limitations pertaining to Plaintiff's need for breaks or likely absences caused by her fibromyalgia – on any medical opinions.

Plaintiff contends that the ALJ erred in adopting her "own opinions [regarding Plaintiff's fibromyalgia limitations] unsupported by any medical source."  [ECF No. 12 at 15].  In support, Plaintiff accurately notes that the ALJ did not rely on a consultative examination by the SSA because none were conducted; nor did the ALJ rely on a medical expert ("ME").  *Id.*

The Commissioner concedes that the ALJ did not rely on any medical opinions – state agency physicians or otherwise – in formulating Plaintiff's fibromyalgia limitations in her RFC assessment.  [ECF No. 16 at 19].  The Commissioner, however, counters that the ALJ was not required to rely on a medical opinion "in this case because the extent of Plaintiff's functional loss would be apparent even to a layperson."  *Id.* (citing *Oliveras v. Comm'r of Soc. Sec.*, 354 F. Supp. 3d 84, 90 (D. Mass. 2019)).  The Court disagrees.

---

[12] As noted, because Drs. Truong and Karande found that Plaintiff's physical impairments – including her fibromyalgia – were not severe, neither state agency physician proceeded to step four; thus, neither provided any opined RFC limitations.  Tr. 68–70, 79–80.

Numerous courts have recognized that an ALJ must "clarif[y] how she derived the specific components of her RFC from record sources." *Staples v. Astrue*, No. CIV 09-440-P-S, 2010 WL 2680527, at *3–4 (D. Me. June 29, 2010) ("The [ALJ] essentially rejected all of the expert reports. . . . Thus, in essence, she crafted the finding of the plaintiff's mental RFC from the raw treatment and assessment evidence of record. . . .  Her mental RFC finding accordingly was unsupported by substantial evidence."); *see also Joyner v. Colvin*, No. 13-cv-122265 (MBB), 2014 WL 12769266, at *15 (D. Mass. Dec. 12, 2014) (finding that "the ALJ's RFC used at step four and step five lacked substantial evidence because the ALJ discounted the only mental RFC in the record as well as the other functional assessments of plaintiff's mental impairments"); *White v. Colvin*, No. 12-cv-419 (SM), 2014 WL 768860, at *4 (D.N.H. Feb. 26, 2014) (finding error where, by giving only "little weight" and "some weight" to expert opinions, the ALJ "was thereby left with no expert opinion to support the functional limitations contained in her RFC"); *Westhaver v. Astrue*, No. CIV.A. 09-12032 (DPW), 2011 WL 3813249, at *12 (D. Mass. Aug. 26, 2011) (same).

In assessing Plaintiff's RFC, the ALJ here "overstep[ped] the bounds of" her expertise as "a layperson" by devising fibromyalgia-related RFC limitations that were based not on medical opinion evidence but "solely on her own interpretation of the medical evidence." *Westhaver*, 2011 WL 3813249, at *11–12; *see also Giandomenico v. Acting Comm'r*, No. 16-cv-506 (PB), 2017 WL 5484657, at *4–5 (D.N.H. Nov. 15, 2017) (quoting *Manso–Pizarro*, 76 F.3d at 17, and *Roberts v. Barnhart*, 67 Fed. Appx. 621, 622–23 (1st Cir. 2003)) (holding that "unless the extent of [Plaintiff's] functional loss, and its effect on job performance, would be apparent even to a lay person,an expert is needed to assess the extent of functional loss").

This case does not fit the "narrow exception" to the rule prohibiting ALJs from interpreting raw data: "namely, [that] an ALJ is not precluded from rendering common sense judgments about functional capacity based on raw medical evidence, as long as the ALJ does not overstep the bounds of a lay person's competence." *Maniscalco v. Colvin*, 167 F. Supp. 3d 207, 217 (D. Mass. 2016) (per curiam) (discussing *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (holding ALJ did not err in relying in part on the opinion of a non-examining state agency physician to find that the claimant was capable of light, as opposed to sedentary, work)). Here, the functional limitations associated with Plaintiff's fibromyalgia may not be considered so "apparent," as to permit the ALJ to assess the requisite limitations using "'commonsense judgments' . . . within the bounds of a lay person's eye.'" *Giandomenico*, 2017 WL 5484657, at *4 (citing numerous cases and quoting *Gordils*, 921 F.2d at 329, and *Manso–Pizarro*, 76 F.3d at 17); *see also id.* (holding that "an ALJ can only make the required RFC assessment without supportive expert opinion where the evidence shows a 'relatively mild physical impairment posing, to the layperson's eye, no significant restrictions'") (quoting *Roberts*, 67 Fed. Appx. at 623). Where a record, like that here, "contains expert [opinion] evidence that Plaintiff *could not* perform light work [as assessed by the ALJ]," the Court is unable to conclude that the ALJ's unsupported finding otherwise represents a "commonsense finding pursuant to *Gordils* that . . . Plaintiff *could* perform such work." *Kathy C. v. Kijakazi*, No. 1:22-cv-00239-JDL, 2023 WL 4230968, at *3 (D. Me. June 28, 2023) (discussing *Gordils*, 921 F.2d at 329)) (holding that ALJ erred in assessing Plaintiff's fibromyalgia-related RFC limitations where the ALJ's assessment was not based on any expert medical opinions and the record contained opinions finding greater restrictions).

The First Circuit has recognized the challenges and complexities in evaluating fibromyalgia in social security cases like this one.  *See Johnson v. Astrue*, 597 F.3d 409, 410 (1st Cir. 2009) (holding ALJ's direct interpretation of the raw medical data in assessment of claimant's fibromyalgia constituted harmful error warranting reversal and remand). Fibromyalgia, by definition, is "'[a] syndrome of chronic pain of musculoskeletal origin [of] uncertain cause[,]'" for which "'[m]usculoskeletal and neurological examinations are normal in fibromyalgia patients, and there are no laboratory abnormalities.'" *Id.* (quoting Stedman's Medical Dictionary, at 671 (27th ed. 2000), and Harrison's Principles of Internal Medicine, at 2056 (16th ed. 2005)).  "There are no objective tests which can conclusively confirm the disease." *Green–Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (finding that "in stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions") (citations omitted).

Like other fibromyalgia cases, the record in this case was "sufficiently ramified that understanding it require[d] more than a layperson's effort at a commonsense functional capacity assessment."  *Kathy C*., 2023 WL 4230968, at *4 (quoting *Manso-Pizarro*, 76 F.3d at 19) (rejecting arguments nearly identical to those made by the Commissioner, and holding that ALJ erred in assessing the claimant's fibromyalgia-related RFC limitations based on his own opinion where ALJ rejected all of the relevant medical opinions); *accord Kelly v. Astrue,* No. CIV.A 09-78-B-W, 2009 WL 3152796, at *5 (D. Me. Sept. 28, 2009) (discussing *Gordils,* 921 F.2d at 329) (holding that ALJ "as a layperson, was not in a position to assess limitations stemming from the plaintiff's [fibromyalgia diagnosis] on the basis of raw medical evidence or judge that experts' RFC opinions would remain unchanged were they aware of that diagnosis"); *see also Galarza v.*

*Comm'r of Soc. Sec.*, No. 20-cv-06245 (OTW), 2023 WL 2158931, at *3 (S.D.N.Y. Feb. 22, 2023) (remanding where ALJ "impermissibly substituted her own lay opinions" regarding claimant's fibromyalgia limitations in assessing claimant's RFC).

Accordingly, the Court finds that the ALJ erred in assessing the RFC limitations associated with Plaintiff's fibromyalgia.[13]  The error was not harmless because the only expert opinion evidence on Plaintiff's fibromyalgia limitations – opinions from treating physicians, Drs. Batra and Hamawi – included restrictions that, if adopted, would have rendered Plaintiff disabled.  Moreover, the ALJ's failure to properly develop the record in evaluating the fibromyalgia-related RFC limitations at step four further impacted the ALJ's step five findings, including the VE hypothetical posed by the ALJ.

### C.    Remand is Required for Further Development of the Record and Additional Proceedings.

Plaintiff asks that the Court "approv[e] her claim," which the Court interprets as a request for remand for an award of benefits.  [ECF No. 12 at 1].  In the alternative, Plaintiff requests remand for further proceedings.  [*Id.*].  The Commissioner has not addressed Plaintiff's requested relief.  ECF No. 16 at 21.

"Under the Social Security Act, courts are empowered 'to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" *Sacilowski*, 959 F.3d at 437 (citing 42 U.S.C. § 405(g); *Garrison v. Colvin*, 759 F.3d 995, 1019

---

[13] As noted, in so finding, the Court declines to adjudicate whether the ALJ properly evaluated the medical opinions because the ALJ on remand will be required to revisit her step four evaluation of the medical opinions.  *See, e.g., Kathy C.*, 2023 WL 4230968, at *4 n.3 (declining under nearly identical circumstances to address additional assignments of error given need for remand on same issue).

(9th Cir. 2014); and *Seavey*, 276 F.3d at 8–9). "[E]very Court of Appeals has recognized that in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits." *Sacilowski,* 959 F.3d at 437 (quoting *Garrison,* 759 F.3d at 1019). "Courts have generally exercised this power when it is clear from the record that a claimant is entitled to benefits." *Id.; see also Seavey*, 276 F.3d at 11–12.

An award of benefits is inappropriate in this case because further development of the record regarding the RFC limitations associated with Plaintiff's fibromyalgia is required.[14] "Where, as here, the ALJ reaches a conclusion about the claimant's physical exertional capacity without the support of an RFC by a physician, generally 'it is necessary to remand for the taking of further functional evidence.'" *Rizzo v. Astrue*, No. CIV. A. 08-11365-JGD, 2010 WL 1408622, at *13 (D. Mass. Mar. 31, 2010) (quoting *Perez v. Sec'y of Health & Human Servs*., 958 F.2d 445, 446 (1st Cir. 1991)); *see also Manso–Pizarro*, 76 F.3d at 19 (finding ALJ erred by determining claimant's RFC without support of an expert's evaluation and remanding case for development of record regarding "evidence of functional ability").

The Court remands for further development of the record, and specifically requires the ALJ on remand to obtain additional expert evidence regarding the RFC limitations associated with Plaintiff's fibromyalgia —presumably in the form of a consultative examination and/or ME

---

[14] Additionally, it is not clear that the ALJ will find Plaintiff disabled once the record is fully developed and the ALJ reevaluates on remand the relevant testimony and medical opinion evidence at steps four and five of the sequential analysis.

testimony.[15]  After doing so, the ALJ will be required to reassess Plaintiff's RFC at step four, which necessarily requires reconsideration of Plaintiff's testimony and the medical opinion evidence, and to reformulate the step five VE hypothetical.

Additionally, the Court notes the existence of a related unchallenged step three error that the ALJ should correct during the proceedings on remand.  In particular, at step three, the ALJ failed to consider whether Plaintiff's severe fibromyalgia equaled any specific listings.  *See Cano v. Saul*, No. 1:19-cv-11563-ADB, 2020 WL 1877876, at *12 (D. Mass. Apr. 15, 2020) (finding that ALJ's failure to "mention . . . by name or reference" severe fibromyalgia at step three constituted harmful error given that "some of the evidence indicates that [claimant] may have met a listing) (quoting *Lopez-Davila v. Berryhill*, No. 17-cv-12212 ADB, 2018 WL 6704772, at *16 (D. Mass. Nov. 6, 2018), *report and recommendation adopted sub nom. Davila v. Berryhill*, No. 17-cv-12212 ADB, 2018 WL 6499862 (D. Mass. Dec. 11, 2018)).[16]  The ALJ's current "boilerplate" finding was not sufficient given the existence of evidence that Plaintiff's fibromyalgia may have satisfied a listing.  *See* Tr. 843 (finding that "[a]lthough [Plaintiff] has 'severe' impairments, . . . . [t]he evidence does not show medical findings that are the same or equivalent to those of any listed impairment"); *see also Cano,* 2020 WL 1877876, at *12; *Sullivan v. Colvin*, No. 15-10308-RGS, 2015 WL 4779246, at *5 (D. Mass. Aug. 13, 2015)

---

[15] The parties have not contested— and the Court declines to disturb—the ALJ's step two determination that Plaintiff's fibromyalgia constitutes a severe impairment.  Accordingly, the ALJ need not revisit the existing May 1, 2023 step two findings on remand.

[16] Because fibromyalgia is not a listed impairment, an ALJ is required at step three to "determine whether [fibromyalgia] medically equal[ed] a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equal[ed] a listing in combination with at least one other medically determinable impairment."  Social Security Ruling (SSR) 12-2p, *Evaluation of Fibromyalgia*, 2012 WL 3104869, at *6 (S.S.A. July 25, 2012).

22

(quoting *Stratton v. Astrue*, 987 F. Supp. 2d 135, 145 (D.N.H. 2012) ("[I]n considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing.")) (reversing and remanding, and holding that although the ALJ's boilerplate finding was "not, in and of itself, adequate reason to set aside the ALJ's finding," it constituted error because the ALJ's step three analysis failed to adequately address evidence that the claimant's lumbar radiculopathy satisfied a listing).

Here**,** the ALJ "was required to actually evaluate the evidence, compare it to [the relevant listing], and explain [her] conclusion." *See Cano*, 2020 WL 1877876, at *12 (citations omitted); *accord Negron v. Kijakazi,* No. 20-CV-30055-KAR, 2021 WL 5641193, at *16 (D. Mass. Dec. 1, 2021) (holding that ALJ's boilerplate finding regarding Plaintiff's fibromyalgia was inadequate at step three where ALJ failed to adequately explain the reasons for the finding); *Colon v. Comm'r of Soc. Sec*., No. 19-cv-1014 (BJM), 2020 WL 5774939, at *11 (D.P.R. Sept. 28, 2020) (finding error at step three where ALJ found Plaintiff's severe impairments included "left ankle fracture s/p surgery for insertion of metal plate, right meniscal tear s/p arthroscopy, lumbar spine disorder, cervical spine disorder," but ALJ failed to expressly consider whether Plaintiff's impairments satisfied Listing 1.02(A), major dysfunction of a joint).

Accordingly, on remand, in addition to development of the record—and prior to her steps four and five reconsideration—the ALJ should also specifically consider whether Plaintiff's fibromyalgia equals any specific listing(s) at step three.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiff's motion to reverse the decision of the Commissioner, [ECF No. 12], is **<u>GRANTED</u>**.  The Commissioner's motion to affirm, [ECF No.

15], is **<u>DENIED</u>**.  Pursuant to sentence four of section 405(g), the case is remanded to the Commissioner for further proceedings consistent with this Order.

      **SO ORDERED.**

March 25, 2025                                      *<u>/s/ Allison D. Burroughs</u>*
                                                          ALLISON D. BURROUGHS
                                                           U.S. DISTRICT JUDGE